*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HARIS ALESEVIC,

        Plaintiff,

v

RUSSELL GORDON, CITY OF DETROIT, and
WAYNE COUNTY,

        Defendants,

and

PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

        Defendant-Appellant,

and

ACCEPTANCE INDEMNITY INSURANCE
COMPANY,

        Defendant-Appellee.

UNPUBLISHED
June 30, 2022

No. 358507
Wayne Circuit Court
LC No. 19-011275-NI

Before: MARKEY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

Defendant, Progressive Michigan Insurance Company (Progressive), appeals by right a
stipulated order dismissing claims by plaintiff against Progressive. Progressive is challenging the
trial court's earlier order that granted summary disposition in favor of defendant, Acceptance
Indemnity Insurance Company (Acceptance). We affirm.

Plaintiff was a passenger in a car being driven by defendant, Russell Gordon. The vehicle
either hit a dip in the road, or Gordon attempted to avoid a dip in the road, which caused the car to
swerve and ultimately crash through a fence and strike a parking-lot pole. Plaintiff suffered a

variety of injuries. At the time of the accident, plaintiff and Gordon had automobile insurance policies through Progressive, and plaintiff owned a 2007 Volvo tractor that could be used to haul semitrailers hitched to the tractor. Plaintiff had a non-trucking insurance policy with Acceptance that covered the tractor. Such non-trucking insurance policies are generally known as "bobtail" policies, insuring the tractor and driver of the rig when the tractor is operated absent a semitrailer or cargo. See *Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19, 22 n 1; 800 NW2d 93 (2010). We discuss in our analysis below the pertinent language in the Acceptance insurance policy.

Plaintiff commenced suit against Progressive and Acceptance for underinsured motorist benefits, uninsured motorist benefits, and personal protection insurance (PIP) benefits related to injuries plaintiff sustained in the motor vehicle accident. Plaintiff also filed various claims against the remaining defendants, none of whom are parties to this appeal. The appeal solely entails Progressive and Acceptance and the payment of PIP benefits. The other claims were ultimately resolved or dismissed. Acceptance moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff's insurance policy was a bobtail policy that only applied to accidents involving the Volvo tractor. Acceptance further contended that the PIP endorsement associated with the Acceptance policy was not applicable to plaintiff because there was an exclusion to the endorsement that was implicated because plaintiff is a "named insured" on his Progressive policy. The trial court granted Acceptance's motion for summary disposition and subsequently denied Progressive's motion for reconsideration.[1] Eventually, plaintiff and Progressive stipulated to the dismissal of plaintiff's claims against Progressive, and this appeal followed.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). Additionally, we review de novo issues concerning the proper interpretation of a contract and the legal effect or application of a contract. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

In ascertaining the meaning of a contract such as an insurance policy, this Court gives the words used in the contract their plain and ordinary meaning, as would be apparent to a reader of the instrument. *Id.* A fundamental tenet of Michigan jurisprudence is that an unambiguous contract is not open to judicial construction and must be enforced as written, thereby respecting the freedom of individuals to arrange their affairs by contract. *Id.* at 468. In *Hunt v Drielick*, 496 Mich 366, 372-373; 852 NW2d 562 (2014), our Supreme Court observed:

> An insurance policy is similar to any other contractual agreement, and, thus, the court's role is to determine what the agreement was and effectuate the intent of the parties. We employ a two-part analysis to determine the parties' intent. First, it must be determined whether the policy provides coverage to the insured, and, second, the court must ascertain whether that coverage is negated by an exclusion. While it is the insured's burden to establish that his claim falls within the terms of

---

[1] We note that the trial court provided no analysis, reasoning, or explanation whatsoever in either granting the motion for summary disposition and in denying the motion for reconsideration; the court simply granted and denied the motions without saying anything more.

the policy, the insurer should bear the burden of proving an absence of coverage. Additionally, exclusionary clauses in insurance policies are strictly construed in favor of the insured. . . . However, it is impossible to hold an insurance company liable for a risk it did not assume, and, thus, clear and specific exclusions must be enforced. [Quotation marks, citations, and brackets omitted.]

On appeal, Progressive argues that plaintiff, as an individual, was the named insured under the insurance policy issued by Acceptance. Further, Progressive contends that the PIP endorsement to the Acceptance policy indicated that it would provide PIP benefits to plaintiff consistent with the no-fault act, MCL 500.3101 *et seq*., if he sustained an injury in an accident that resulted from the use of "an auto" as "an auto," which language would encompass Gordon's vehicle. Thus, according to Progressive, Acceptance and Progressive are in the same order of priority under MCL 500.3114(1), thereby mandating a pro rata split or equitable division under former MCL 500.3115(2) in regard to the payment of PIP benefits.[2] Acceptance counters that its policy did not provide coverage under the circumstances presented because the accident did not involve the 2007 Volvo tractor. Acceptance additionally argues that a policy exclusion barred PIP coverage because plaintiff was a "named insured" and could collect PIP benefits under his Progressive policy. Accordingly, because there was no coverage, and because, assuming coverage, an exclusion applied, Progressive alone was responsible for the payment of PIP benefits, and the purported issue of priority, equal or otherwise, was irrelevant.

The certificate of insurance for plaintiff's policy with Acceptance provided that it was part of the insurance agreement and that PIP coverage, among other coverages, would "apply *only* to the Specified 'Auto' or 'Autos' below." (Emphasis added.) And the only auto listed in the certificate of insurance was the "2007 Volvo Tractor." This language plainly and unambiguously precluded liability by Acceptance to pay PIP benefits in relation to an accident that did not involve the Volvo tractor even though plaintiff may have suffered injuries in the accident. The Acceptance insurance policy, however, also contained a Michigan PIP endorsement, which Progressive contends overrode the certificate of insurance or broadened the PIP coverage. More specifically, the PIP endorsement provided, in part:

> We will pay personal injury protection benefits to or for an "insured" who sustains "bodily injury" caused by an "accident" and resulting from the ownership, maintenance or use of *an* "auto" as *an* "auto." These benefits are subject to the provisions of Chapter 31 of the Michigan Insurance Code. . . . [Emphasis added.]

Progressive, relying on this provision, maintains that plaintiff was the "insured" under the Acceptance policy and that the plain language of the endorsement did not limit its application to any particular vehicle.

---

[2] MCL 500.3114 and MCL 500.3115 were amended pursuant to 2019 PA 21 after the events in this case. The amendment does not affect our analysis, and current MCL 500.3114(8), comparable to former MCL 500.3115(2), now provides for the equal division of PIP-payment obligations with respect to insurers of equal priority.

Acceptance challenges Progressive's argument regarding the PIP endorsement, asserting, in part, that the endorsement modified the insurance policy but only with respect to a covered automobile, which, again, was solely the 2007 Volvo tractor. Progressive argues that Acceptance essentially cherry-picks from the language in the PIP endorsement and does not read the endorsement's introductory language in its entirety. The PIP endorsement to the Acceptance insurance policy provided, in part:

> For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Michigan, this endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM

> GARAGE COVERAGE FORM

> MOTOR CARRIER COVERAGE FORM

> TRUCKERS COVERAGE FORM.

> *With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement*. [Emphasis added.]

Progressive maintains that the coverage form at issue in this case was the "NON-TRUCKING AUTOMOBILE COVERAGE FORM," and not any of the coverage forms listed in the PIP endorsement. Therefore, according to Progressive, the emphasized language in the above-quoted passage was implicated, and it effectively expanded PIP coverage to encompass injuries incurred by plaintiff in *any* auto accident.

We do not agree with Progressive's construction of the introductory language found in the PIP endorsement. The covered "auto" was the Volvo tractor, so the PIP endorsement modified insurance in connection with the Volvo tractor, but then only in regard to coverage forms that were not applicable in this case. We note that if one of the coverage forms listed in the PIP endorsement had in fact been applicable, there would perhaps be tension between the "covered auto" language and the "an auto" language in the PIP endorsement. Progressive relies on the sentence in the PIP endorsement that we quoted and emphasized above: "With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement." But this language was simply referring to the listed coverage forms, inapplicable here, indicating that their provisions continued to govern unless the endorsement modified them. In sum, there was nothing in the PIP endorsement that negated or broadened the language in the certificate of insurance that plainly and unambiguously limited PIP coverage to injuries arising out of accidents involving the Volvo tractor.

Furthermore, assuming that the PIP endorsement was applicable, the endorsement provided for the following exclusion in section C of the endorsement:

> We will not pay personal injury protection benefits for "bodily injury"

\* \* \*

-4-

6. To anyone entitled to Michigan no-fault benefits as a Named Insured under another policy. This exclusion does not apply to you or anyone "occupying" a motorcycle.

Plaintiff was a named insured in his Progressive policy. Accordingly, the exclusion identified in the PIP endorsement was implicated and needed to be honored assuming general application of the endorsement in the first place.

Progressive argues that the exclusion was unenforceable because the no-fault act statutorily mandates PIP-benefit coverage in automobile insurance policies. Progressive also claims that there was an exclusion within the exclusion as to "you," which was a reference to plaintiff, maintaining that "you" did not modify "occupying a motorcycle." Both of these arguments are unavailing.

In *Johnson v USA Underwriters*, 328 Mich App 223; 936 NW2d 834 (2019), this Court stated:

> The no-fault act . . . does not address, let alone bar, an insurer's ability to sell optional insurance coverages only. In this case, the USA policy did not provide the mandatory no-fault coverages to Vandeinse. Indeed, USA does not offer mandatory coverages to any customers; it only sells collision and comprehensive policies, which, according to Vandeinse's insurance agent, are sometimes bundled with other insurance policies for a reduced cost. Because the no-fault act does not bar this practice, it does not violate Michigan law, and we cannot read into the statute something that is not there.

> * * *

> The dissent concludes that the no-fault act "implicitly" requires that every insurer provide policies that include the mandatory coverages, and then—and only then—can an insurer "delete" coverages after verification that the insured will not operate the vehicle on a roadway. However, the no-fault act does not state that every insurer must provide mandatory coverages. Instead, MCL 500.3101(1) requires that any insured who intends to drive on a highway must have the mandatory coverages. The no-fault act also allows insurers to delete coverages from policies that have already been issued. The dissent has not identified any statutory provision that requires insurers to provide mandatory coverages when issuing policies to insureds. If that was the Legislature's intent, it would have included such a provision in the no-fault act.

Accordingly, Acceptance's non-trucking insurance policy—a bobtail policy[3]—was not required to provide PIP benefits to plaintiff. And plaintiff had existing PIP coverage through

---

[3] This Court approved of such policies in *Integral Ins Co v Maersk Container Serv Co, Inc*, 206 Mich App 325, 330-332; 520 NW2d 656 (1994).

Progressive, so he was not without such coverage. Therefore, the exclusion in the PIP endorsement was enforceable.

Finally, we reject Progressive's interpretation of the exclusion within the exclusion, which provides: "This exclusion does not apply to you or anyone 'occupying' a motorcycle." This language plainly and unambiguously provided an exclusion to the exclusion for a motorcycle occupant, whether it be "you" or "anyone" riding on the motorcycle. "[Y]ou" and "anyone" *both* modify " 'occupying' a motorcycle.' " If the language were construed to exclude "you" in general, it would effectively swallow up the exclusion regarding persons entitled to PIP benefits as a named insured under a different insurance policy.

In sum, we conclude that there is no genuine issue of material fact that Progressive was the only party obligated to provide PIP benefits in relation to plaintiff's injuries; there was no true priority issue. Therefore, we hold that the trial court did not err by granting Acceptance's motion for summary disposition.

We affirm. Having fully prevailed on appeal, Acceptance may tax costs under MCR 7.219.


/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Sima G. Patel